## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

PATRICK COLLINS, INC.      *

    Plaintiff,          *

                      *

v.                    *        CASE NO. 8:12-cv-00093-DKC

JOHN DOES 1-39,         *

    Defendants.       *

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE'S OMNIBUS MOTION TO SEVER DEFENDANTS; EMERGENCY STAY OF THE PROCEEDING; QUASH SUBPOENA OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

## I.      INTRODUCTION

Defendant creates a fictional picture of Plaintiff's purpose, accusing Plaintiff of having a for-profit litigation model, in an effort to distract the Court from the serious copyright infringement claim brought by Plaintiff. In doing so, Defendant cites numerous unrelated cases involving different plaintiffs, counsel, and separate fact patterns to support his or her contention.

This Court has held in favor of Plaintiffs in similar copyright infringement actions. See Patrick Collins, Inc. v. Does 1-22, 11-CV-01772-AW, 2011 WL 5439005 (D. Md. Nov. 8, 2011) ("the interests of judicial efficiency also weigh in favor of joining these claims, and doing so may be more beneficial for the Doe Defendants"). Here, at this stage in the proceedings, there is little to be gained from severing the Doe Defendants, but there are certain efficiencies to be had by retaining them in the same suit

If, as Defendant urges, the Court were to sever all Doe defendants at this stage of the litigation process, Plaintiff would likely be unable to identify the remaining defendants due to the

short time period that ISPs maintain their logs.  Plaintiff would have to file 39 (thirty nine) individual law suits and discovery requests, needlessly consuming the Court's resources.  If the ISPs delete their logs of user information during this time, Plaintiff will be unable to protect its copyright.  Defendant is clearly aware of the difficulty Plaintiff would incur if this Court severed the present suit.  Defendant does not actually want to be sued individually, but instead hopes that by severing the suit, Plaintiff will be delayed and suffer needless litigation costs while trying to obtain the identity of the Doe Defendants, who may not be identifiable by the time Plaintiff files each suit individually.

From reports received by Plaintiff's investigator, IPP Limited, Patrick Collins Inc. knows that its movies are being illegally downloaded through the BitTorrent peer-to-peer file sharing protocol by people residing in the U.S. well over 100,000 times a month.  While it may be impossible for Plaintiff to sue each and every individual that illegally downloads Plaintiff's copyrighted works, Plaintiff intends on making every effort to sue as many individuals as possible within its resources.  Plaintiff will proceed against almost every Defendant with whom Plaintiff does not reach an amicable resolution. As should be clear, the putative Doe here and others like him or her are merely attempting to divert attention from their digital theft by claiming that Plaintiff is improperly holding them to account.  These arguments have no bases in law, fact or equity and should be disregarded for that reason.

As Plaintiff has explained in previous memoranda, throughout this year, in a series of decisions, Courts across the country have developed a rule permitting joinder in BitTorrent cases where, as here, (1) the complaint clearly explains how BitTorrent works through a series of transactions, (2) all of the defendants live in the district (eliminating long-arm issues and venue), (3) all of the defendants were part of the exact same swarm of peer infringers as evidenced by a

unique cryptographic hash value, and (4) Plaintiff pled that the Defendants' are contributorily liable for each others' infringement.

## II.      JOINDER IS PROPER

### A. Facts

#### 1. Absent Joinder, Data Retention Issues Will Cause Plaintiff To Sue John Does That Cannot Be Identified

Plaintiff has learned through suits across the country that there are major deficiencies associated with many internet service providers' ability to correlate a subscriber to an individual.[1] Many ISPs delete the data correlating an individual to an IP address after only a few weeks.   According to the FBI, 19% of its ISP lookup requests in one child pornography investigation failed to yield a positive identity.  See FN 1.  Plaintiff's statistics are similar, 10-15% of the identities subpoenaed by Plaintiff in cases nationally fail to identify a person or legal entity.  While most national ISPs are fairly good at retaining data, several other national ISPs and many regional ISPs are very bad at it.  Any decision regarding joinder in a BitTorrent peer-to-peer copyright case simply must take data retention and data failure issues into consideration. Significantly, a rule requiring Plaintiff to sue John Doe defendants on an individual basis creates the substantial risk that the target will not be identified.   Unless the Court system allows Plaintiff to join cases, Plaintiff runs the risk of being unable to identify a significant number of defendants.

#### 2. Joinder is Required By Rule 1's Instruction to Judges to Construe The Rules to Secure the Inexpensive Determination of Every Action

Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action.  Fed.R.Civ.P. 20, the joinder rule, has the same purpose.  As

---

[1] See Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://judiciary.house.gov/hearings/pdf/Weinstein 01252011.pdf

explained below, disallowing joinder is inconsistent with the purpose of both Rules. Indeed, since jurisdiction and venue is proper in this District, if Plaintiff was forced to proceed individually all of these cases would be filed in this District. Plaintiff would have to file notices of related cases. Presumably, this Court would consolidate the cases for purposes of judicial management. Thereafter, at every stage of the process, the litigants and the Court would be faced with additional work. For example, instead of one motion for leave to serve subpoenas in advance of a 26(f) conference, there would be many such identical motions. Instead of one Rule 26(f) conference and report, there would be many such identical Rule 26(f) conferences and reports. Identical pleadings and papers would be repetitively filed. Not only would this needlessly increase the costs for the parties and Court but also for the third party internet service providers.

### B.  Legal Argument

Fed. R. Civ. P. 20(a)(2) states:

Persons . . . may be joined in one action as defendants if:
  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
  (B) any question of law or fact common to all defendants will arise in the action.

"Under the Federal Rules generally, 'the impulse is toward the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Further, as your Honor noted recently "[t]he permissive joinder rule is to be construed in view of its purposes 'to promote trial convenience and expedite the final determination of disputes.'" Third Degree Films, Inc. v. Does 1-108, Civ. Act. No. DKC 11-3007, 2012 U.S. Dist. LEXIS 25400 (D. Md. Feb. 28, 2012) (citing Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007)). Here, severing Defendants will create multiple totally unnecessary lawsuits.

4

### 1.  The Logical Relationship Test

Courts across the country employ the "logical relationship" test to ascertain whether joinder is proper under the same transaction or series of transactions test.  According to the rule, a series of transactions may be a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship, and absolute identity of all events is unnecessary.  "'Transaction' is a word of flexible meaning. <u>It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.</u>"  <u>Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 371(1926)</u> (underlining added).  The Fourth Circuit has liberally construed the logical relationship test to promote judicial economy.  <u>See</u> <u>Sue & Sam Mfg. Co. v. B-L-S Const. Co.,</u> 538 F.2d 1048 (4th Cir. 1976).  "We are also reminded that the rule should be given a broad realistic interpretation to avoid a multiplicity of suits."  <u>Id</u>. at 1051.  The logical relationship test has been consistently used in decisions concerning BitTorrent copyright infringement in suits across the country.  <u>See e.g.</u> <u>Patrick Collins, Inc. v. John Does 1-2590,</u> 2011WL 4407172, * 6 (N.D. Cal. 2011).

### 2.  The Way BitTorrent Works, Infringers Continue To Distribute Files Indefinitely

The BitTorrent protocol is a distribution system.  All the Defendants were distributing the movie to the other peers in the swarm.  <u>See</u> Plaintiff's Dec. ¶¶20-21.  BitTorrent continues to distribute data for a particular torrent file until the user commands its BitTorrent Client (software program) to stop distributing it.  Many users never instruct the program to stop distributing data.  According to BitTorrent's own website:

> **Seeding** is where you leave your BitTorrent client open after you've finished your download to help distribute it (you distribute the file *while* downloading, but it's even more helpful if you continue to distribute the full file even after you have finished

downloading). Chances are that most of the data you got was from seeds, so help give back to the community! It doesn't require much - <u>BitTorrent will continue seeding until the torrent is removed</u>. [Underlining added.]
<u>See</u> http://www.bittorrent.com/help/guides/beginners-guide.

### 3.   <u>Same Swarm BitTorrent Infringement is Logically Related</u>

The      following      description      of      BitTorrent      can      be      found      at http://computer.howstuffworks.com/bittorrent2.htm,  and  describes  the  series  of  transactions:

BitTorrent    is    unique    insofar    as    it distributes the burden of sharing files to <u>all</u> users:



| **WHAT BITTORRENT DOES** |
| --- |
| Unlike some other peer-to-peer downloading methods, BitTorrent is a protocol that offloads some of the file tracking work to a central server (called a tracker).  Another difference is that it uses a principal called tit-for-tat.  This means that in order to receive files, you have to give them.  This solves the problem of leeching – one of the developer Bram Cohen's primary goals.   With BitTorrent the more files you share with others, the faster your downloads are.   from multiple computers. |



| What makes the BitTorrent protocol unique is that it distributes [the burden of] the sharing of files to **all** users who have downloaded or are *in the process* of downloading a file. Because BitTorrent breaks up and distributes files in hundreds of small chunks, you don't even need to have downloaded the whole file before you start sharing. As soon as you have even a piece of the file, you can start sharing that piece with other users. That's what makes BitTorrent so fast; your BitTorrent client starts sharing as soon as it downloads one chunk of the file (instead of waiting until the entire download has been completed).   [Parenthetical added, |
| --- |

See://lifehacker.com/285489/a-beginners-guide-to-bittorrent.  By causing all users to distribute the file, BitTorrent ensures that all peers in a swarm materially aid every other peer.   This critical fact makes BitTorrent different than every other peer-to-peer network and is one of the reasons BitTorrent cases are distinguishable from previous peer-to-peer copyright cases.

### 4.  Doe Defendants Distributed The Same Exact Torrent File As Evidenced By A Cryptographic Alphanumeric Hash Value

As alleged in the Complaint, Plaintiff's movie was processed by a BitTorrent Client (a BitTorrent software program) which generated a torrent file.  The BitTorrent Client divided the movie into hundreds or thousands of digital parts called "pieces."[2]  "Each piece is protected by a cryptographic hash contained in the torrent descriptor."  Id.  The Hash system was created by the National Security Agency.[3]  It is used not only by BitTorrent but by this Court when it sends CM/ECF filing receipts to litigants (the alphanumeric code at the end of the filing receipt is a cryptographic hash.)   "Cryptographic hash functions have many information security applications, notably in digital signatures, message authentication codes (MACs), and other forms of authentication."  See FN 3.  In BitTorrent, "[w]hen another peer later receives a particular piece, the hash of the piece is compared to the recorded hash to test that the piece is error-free."  See FN 2. "Cryptographic hash values are sometimes called (digital) fingerprints." See FN 3.

Plaintiff's investigators use the hash value as a digital fingerprint that enables Plaintiff to ensure that all of the infringements alleged in this suit arise from the exact same unique version of Plaintiff's movie as evidenced by the cryptographic hash value.  Significantly, many of Plaintiff's movies have been initially seeded several times.  Each seeding produces its own independent swarm.   Here, Plaintiff has only sued Defendants in the exact same swarm.

---

[2] See http://en.wikipedia.org/wiki/BitTorrent_(protocol)
[3] See http://en.wikipedia.org/wiki/Cryptographic_hash

### 5. The District of Columbia Correctly Supports Joinder In BitTorrent Cases

The District of Columbia has issued by far and away the longest, most comprehensive, decisions concerning the issues, including joinder, raised in BitTorrent litigation.  Eight cases D.C. judges have adjudicated, which can be found on Westlaw, are as follows: (1) Voltage Pictures, LLC v. Vazquez, 2011 WL 5006942 (D.D.C. 2011) (opining joinder is proper and that Doe Defendants do not have standing to intervene in the discovery process prior to being named as a defendant); (2) NuImage, Inc. v. Does 1-22,322, 2011 WL 3240562 (D.D.C. 2011) (10 page opinion, permitting joinder but raising concerns about long-arm); West Coast Productions, Inc. v. Does 1-5829, 275 F.R.D. 9 (D.D.C. 2011) (11 page opinion, permitting joinder, holding long arm could be used, denying all motions to quash); Call of the Wild v. Does 1-331, 274 F.R.D. 334 (D.D.C. 2011) (permitting joinder, holding long arm could be used, denying all motions to quash); Maverick Entertainment Group, Inc. v. Does 1-2115, 2011 WL 1807428 (D.D.C. 2011) (18 page opinion, permitting joinder, holding long arm could be used, denying all motions to quash); Voltage Pictures, LLC v. Does 1-5000, 79 Fed.R.Serv.3d 891 (D.D.C. 2011) (18 page opinion permitting joinder, holding long arm could be used, denying all motions to quash); Donkeyball Movie, LLC v. Does 1-171, 2011 WL 1807452 (D.D.C. 2011) (15 page opinion permitting joinder, holding long arm could be used, denying all motions to quash); Call of the Wild v. Does 1-1062, 770 F.Supp.2d 332 (D.D.C. 2011) (36 page opinion addressing all of the issues raised in pre-Doe identification BitTorrent litigation.)  Significantly, the Call of the Wild Court denied all of the motions to quash, ruled in favor of copyright owners on the joinder issue, the free speech issue, the right to remain anonymous issue [Doe's who file motions do not have

8

that right], allowed Plaintiff to use the long arm statute, and held that internet service providers cannot refuse to comply with subpoenas on the basis that it is unduly burdensome.

### 6. Joinder is Proper Because the Defendants' Infringement Was Part of a Series of Transactions

In construing the Federal Rules of Civil Procedure, "[w]here the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series." United States v. Santoni, 585 F.2d 667, 673 (4th Cir. 1978).  "Although 'series of acts or transactions' is not defined in the Rule, such phrase logically includes those transactions so interconnected in time, place and manner as to constitute a common scheme or plan.  Id.

### i.  Here, Plaintiff Properly Pled a Series of Transactions

Pursuant to Fed. R. Civ. P. 8, under the notice pleading standard, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007).  Additionally, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the Complaint."  Id. at 94.  Plaintiff's Complaint easily satisfies Rule 8's requirement to give Defendants notice that Plaintiff is asserting that Defendants acted together in the same transaction or through a series of transactions.  See Compl. ¶32, ¶33, ¶34, ¶36, ¶41, ¶42.

When deciding on this exact issue, your Honor held:

[T]he Doe Defendants . . . 'not only swapped the same copyrighted work, they swapped the exact same file' . . . [and] Plaintiff . . . points out that the use of forensic software connecting IP addresses to the same exact 'hash' has enabled it to sue only users who have taken part in the same series of transactions . . . it is reasonable to conclude that each of the Doe Defendants may have facilitated directly the download of the Work by another of the Doe Defendants and was thus part of the 'same transaction, occurrence, or series of transactions or occurrences.'

<u>Third Degree Films, Inc. v. Does 1-108</u>, Civ. Act. No. DKC 11-3007, 2012 U.S. Dist. LEXIS 25400 (D. Md. Feb. 28, 2012). (Internal citations omitted).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

### 7.   <u>There Are Common Issues of Fact and Law</u>

"Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact." <u>Call of the Wild</u>, 770 F.Supp.2d at 343. "The plaintiffs meet this requirement." <u>Id.</u> "In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." <u>Id.</u> The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." <u>Id.</u>

### 8.   **Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This <u>Stage</u>**

"The Court finds no prejudice to the Defendants at this stage in the litigation. In fact, the Court finds that joinder in a single case of the Defendants who allegedly infringed the same copyrighted material both promotes judicial efficiency and benefits the Defendants, who will be able to see the defenses, if any, raised by other John Does." <u>K-Beech Inc., v. John Does 1-57</u>, Case 2:11-cv-00358-CEH-SPC,  at*12 (M.D. Fl. 2011).

"[T]he putative defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to the plaintiffs' allegations or assert a defense. The defendants may be able to demonstrate prejudice [after being named], but they cannot. . . before that time." <u>Call of the Wild v. Does 1-1062,</u> 770 F.Supp.2d 332, 344 (D.D.C. 2011).

### 9. **Disallowing Joinder Would Effectively Prevent Plaintiff From Being Able to Enforce Its Copyrights and Would Be Inconsistent With Rule 1**

The <u>Call of the Wild</u> Court held that disallowing joinder would effectively prevent Plaintiff from being able to enforce its copyrights:

> The plaintiffs would be forced to file 5,583 separate lawsuits * * * Plaintiffs would additionally be forced to pay the Court separate filing fees in each of these cases, * * * This would certainly not be in the "interests of convenience and judicial economy," or "secure a just, speedy, and inexpensive determination of the action." <u>Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner.</u>

<u>Id</u>. at 344-345.

### 10. <u>District Courts From the Around the Country Permit Joinder</u>

### i. **Maryland Federal Courts Permit Joinder**

This Court has issued at least six opinions stating that joinder is proper in similar BitTorrent actions. <u>See</u> <u>Patrick Collins Inc. v. Does 1-22</u>, 2011 WL 5439005 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants); <u>Patrick Collins Inc. v. Does 1-11</u>, 2011 WL 5439045 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants); <u>K-Beech Inc. v. John Does 1-22</u>, 2011 WL 60000768 (D. Md. 2011); (holding joinder is proper and may actually be beneficial to the defendants); <u>Third Degree Films v. Does 1-118</u>, 2011 WL 6837774 (D. Md. 2011) (holding joinder is proper and may actually be beneficial to the defendants); <u>Third Degree Films v. Does 1-108</u>, 2012 LEXIS 25400 (D. Md. Feb. 28, 2012).

## ii.  The District Court of Colorado Permits Joinder

In every BitTorrent copyright infringement case before the court, the District Court of Colorado has ruled that joinder is proper and creates judicial efficiency.  See Patrick Collins, Inc. v. John Does 1-33, 2012 WL 415424 (D. Colo. 2012).

> [R]ather than result in needless delay, joinder of the Doe Defendants 'facilitates jurisdictional discovery and expedites the process of obtaining identifying information, which is prerequisite to reaching the merits of [Plaintiff's] claims .' *Voltage Pictures,* 2011 WL 1807438, at *7. Therefore, the Court concludes that joinder under Rule 20(a)(2) is proper at this juncture.

Id. at 3.

## iii.  California District Courts Permit Joinder

All three Districts in California which have adjudicated joinder in BitTorrent copyright infringement cases hold that joinder is proper.   In Camelot Distribution Group v. Does 1-1210, 2011 WL 4455249, *3 (E.D.Cal. 2011), the Court "conclude[d] that a decision regarding joinder would be more appropriately made after further development of the record."  See also, Berlin Media Art E.K. v. Does 1-144, 2011 WL 4056167 (E.D. CA. 2011) (permitting discovery in joined case.)  In Liberty Media Holdings, LLC v. Does 1-62, 2011 WL 1869923 (S.D.Cal.2011) the Court held "[a]fter careful consideration of the issue, . . . [i]n this case, the complaint sufficiently *alleges* that defendants are properly joined due to the use of BitTorrent, which necessarily requires each user to be an uploader as well as a downloader."

Chief Magistrate Judge Maria Elena-James sums up the decisions of the judges in the Northern District of California who have repeatedly held that joinder is proper.   See e.g. Patrick Collins v. Does 1-2590, 2011 WL 4407172 (N.D. Cal. 2011), noting that "[r]ecently, courts in

this District . . . have come to varying decisions about the proprietary of joining multiple

defendants in BitTorrent infringement cases" and finding:

> This Court has carefully reviewed such decisions and notes that they are highly
> dependent on the information the plaintiff presented regarding the nature of the
> BitTorrent file-sharing protocol and the specificity of the allegations regarding the
> Doe defendants' alleged infringement of the protected work. Both of these factors
> guide the Court's joinder analysis . . . [in concluding joinder is proper].
> See also, New Sensations, Inc. v. Does 1-1,474, 2011 WL 4407222, (N.D.Cal. 2011)

(same.) Accord Hard Drive Productions, Inc. v. Does 1–46, 2011 U.S. Dist. LEXIS 67314 (N.D.

Cal. 2011) (same); New Sensations, Inc. v. Does 1745, 2011 WL 2837610 (N.D. Cal. 2011)

(same, and opining "Judge Howell of the D.C. Circuit has repeatedly held that in infringement

actions" joinder is proper "[h]is analysis makes sense.")[4]

#### iv.  The Northern District of Illinois Permits Joinder

There are only four decisions which come up using Westlaw and the terms "BitTorrent &

joinder" in Illinois; they are Hard Drive v. Does 1-55, 2011 WL 4889094, (N.D.Ill 2011); First

Time Videos, LLC v. Does 1-76  --- F.R.D. ----, 2011 WL 3586245 (N.D.Ill.,2011); First Time

Videos, LLC v. Does 1-500, --- F.Supp.2d ----, 2011 WL 3498227 (N.D.Ill.,2011); MGCIP v.

Does 1-316, 2011 WL 2292958 (N.D. Ill. 2011).   All four Illinois decisions held joinder is

proper and distinguish previous Illinois decisions (which cannot be found on Westlaw) that do

not so hold.

#### v.  New York Permits Joinder

Courts in New York have held that joinder is proper in BitTorrent copyright cases when

as here all Doe Defendants' IP addresses were traced to this district and all of the Defendants in a

---

[4] See Pacific Century Intern v. Does 1-48, 2011 WL 4725243 (N.D. Cal. 2011) (a poorly
reasoned opinion holding that if Plaintiff admits additional discovery is needed to proceed
against the correct person then joinder is improper.) Cf Liberty Media Holdings, LLC v. Swarm
of November 16, 2010, 2011 WL 1597495 (S. D. Cal. 2011) (holding a claim for negligently
letting others to use your internet could withstand a motion to dismiss). Here, Plaintiff intends to
pursue each Doe Defendant.

given case participated in the same swarm of infringers as evidenced by a cryptographic hash value.  See DigiProtect USA Corp. v. Does, 2011 WL 4444666 (S.D.N.Y. 2011).  See also Digital Sin, Inc. v. Does 1-176, 12-CV-00126 AJN, 2012 WL 263491 (S.D.N.Y. Jan. 30, 2012).

Although not on Westlaw, in a complaint with very nearly verbatim identical allegations as the one before the Court now, New York held joinder was proper.  Patrick Collins v. John Does 1-9, 11-cv-01269 (S.D.N.Y. 2011) (Dkt. 10) stating: "Order denying Motion to Quash and to Sever.  Upon careful consideration, for the reasons stated in plaintiff's opposition, the motion is denied."

### vi.  New Jersey, North Carolina, and Florida Permit Joinder

Courts in New Jersey, North Carolina, and Florida have also permitted joinder in BitTorrent actions where, as here, all of the defendants were a part of the same swarm.  See K-Beech v. John Does 1-39, et. al., 11-cv-04776 (D. NJ Jan.6, 2012); K-Beech, Inc. v. Does 1-29, 2011 WL 5966337 (W.D.N.C. Nov. 28, 2011); K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC, at*12 (M.D. Fl. 2011); AF Holdings, LLC v. Does 1-162, Case No. 11-23036, (S.D. Fl Feb. 14, 2012).

### 11. Joinder is Also Proper Because Plaintiff Pled That Each of the Defendants Is Contributorily Liable For Each Other Defendant's Infringement

Joinder is also proper because Plaintiff pled that each Defendant is contributorily liable for each of the other Defendant's infringement.  "It is, today, a given that 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'"  Costar Group, Inc. v. Loopnet, Inc., 164 F. Supp.2d 688, 696 (M.D. 2001).  Here, Plaintiff properly pled contributory infringement.  See Compl. ¶¶ 54-59.

Significantly, Plaintiff will prove that there was one initial seeder that uploaded the subject torrent file identified by the unique hash value.  Plaintiff will further prove that when a Defendant receives a piece from a downstream infringer, i.e., an infringer who already had that piece, then that Defendant will automatically begin distributing the piece it received from the downstream infringer to others.  By doing so, Plaintiff will prove that said Defendant materially assists the downstream infringer's direct infringement of Plaintiff's exclusive right to "redistribute . . . the Work. . . ."  in violation of 17 U.S.C. § 106(3) and 17 U.S.C. §501.  Similarly, when a Defendant provides a piece of Plaintiff's copyrighted work to an upstream infringer, Plaintiff will prove that the upstream infringer both sends that piece to other infringers and will also assemble the entire Work.  Accordingly, by delivering a piece to an upstream infringer, the Defendant is contributorily liable for materially assisting the upstream infringer to redistribute, perform and display the Work in violation of 17 U.S.C. § 106(3)-(5) and 17 U.S.C. § 501.

## 12. Contributory Infringement is a Jury Question

Since one of the grounds for permissive joinder is joint and several liability, should the Court hold that joinder is not permitted, then any such holding would effectively summarily adjudicate Plaintiff's claim for contributory infringement.  Such a holding would be erroneous because contributory infringement is "a question of fact for trial."  Adobe Systems, Inc. v. Canus Productions, Inc., 173 F. Supp.2d 1044, 1055 (C.D. Cal. 2001); Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors, 983 F. Supp. 1167 (N.D. IL 1997) ("fact questions precluded summary judgment with respect to providers' liability for contributory infringement").  Moreover, since BitTorrent works through the cooperative exchange among peers in a swarm, claims for contributory infringement must be permitted or the law would be inconsistent with the very nature of BitTorrent.

### 13. Plaintiff Intends to Call Several of the Defendants To Prove Contributory Infringement vis-à-vis the other Defendants

Regarding contributory infringement, by way of example, Plaintiff has to prove Doe 1 is liable for direct infringement in order for Plaintiff to succeed on its claim that Doe 2 is contributorily liable for Doe 1's infringement. Indeed, "without proof of direct infringement there can be no liability for contributory infringement." Bridgeport Music, inc. v. Diamond Time, Ltd., 371 F.3d 883 (6th Cir. 2004). Accordingly, to support its claim of contributory infringement against each Defendant vis-a-vis each other Defendant, Plaintiff intends to call each of the Defendants to prove the direct infringement. The realities associated with Plaintiff's evidentiary burdens weighs in favor of having one trial, as opposed to multiple trials, so that the parties' resources are not squandered.

## III.     THIS COURT SHOULD NOT QUASH THE SUBPOENA

### A. Plaintiff Has Not Violated Defendant's Fourth Amendment Rights

Defendant unconvincingly attempts to argue that identifying his IP address through BitTorrent is equivalent to a wiretap and a violation of his Fourth Amendment rights. In this case, Defendant does not have a Fourth Amendment right to his IP address because no search or seizure took place of his property. Plaintiff's investigator obtained Defendant's IP address when a computer utilizing Defendant's IP address connected directly to Plaintiff's investigator's computer and submitted a piece of Plaintiff's copyrighted movie to Plaintiff's investigator. Plaintiff did not, as Defendant suggests, invade his computer or any personal information.

Indeed, courts have held that when a Defendant enters into a BitTorrent swarm, he or she is engaging in a public distribution of information. See Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7 B5BC9C05, 80 Fed. R. Serv. 3d 1435 (D. Mass. 2011) ("[a]s BitTorrent users, Does 1–38 allegedly took all necessary steps for a public distribution: by participating in the unauthorized download and distribution of the Motion

Picture file as members of the swarm, they infringed on Liberty Media's copyrighted material"). Id. Here, Defendant's IP address became public the moment he entered into the swarm and began distributing copyrighted material.

### B. **Dynamic IP Addresses are Traceable to a Particular Subscriber's Account**

As John Doe 14 has admitted, his IP address is dynamic.  This means that over time his ISP rotates his IP address and it has likely changed since Plaintiff's investigator identified the infringing material.  As Defendant describes, "any subscriber could get any address in the range assigned in the address pool at any given time."  Although his IP address may change, his IP address is never shared with another subscriber at the same time.  See In re 2703(d), 787 F. Supp. 2d 430, 440 (E.D. Va. 2011) ("like a phone number, an IP address is a unique identifier, assigned through a service provider").

While any subscriber could get any address at any given time, Defendant's ISP keeps track of when each individual is assigned an IP address.  See Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 356-57 (D.D.C. 2011) (stating that while dynamic IP addresses may be more difficult for ISP's to produce records, ISP's generally maintain logs of users with dynamic IP addresses and therefore it does not constitute an undue burden to produce the records).  See also London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 160-61 (D. Mass. 2008) ("ISPs generally keep logs of which IP address is assigned to which user—although it may purge those logs after a certain period of time, which was one of the key facts relied *161 upon by the Court in granting expedited discovery").  Defendant's ISP identified him as being assigned the IP address at the time of infringement. When the infringement occurred, no subscribers, other than Defendant, would have been assigned that IP address.

### C. **Plaintiff's Only Option to Identify the Infringer is Through His or Her IP Address**

Defendant's IP address is the only way to identify the infringer. Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. Almost always, this is a family member such as a husband, wife, son or daughter. Copyright infringement is a tort and under black letter tort law parents are liable for their children's torts. At the proper point, if necessary, Plaintiff will examine Defendant's computers. Plaintiff is confident one of Defendant's computers will have a BitTorrent Client or Defendant will have recently and conveniently thrown away a computer. At this stage of the litigation process it is sufficient that Plaintiff's complaint properly pled that Defendant is liable for direct and contributory infringement. These allegations are reasonable because the subscriber is the most likely infringer.

If this Court were to follow Defendant's rationale, Plaintiff would have no recourse against the mass copyright infringement it suffers on a daily basis. Any such holding would be contrary to existing law and the express policy of the Copyright Office. During her time as Register of Copyrights, Mary Beth Peters gave a statement to the Senate Judiciary Committee on exactly the type of copyright infringement claims that are before this Court:

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such

services.[5]  (Emphasis added.)

She further continued that Copyright owners should "offer no apologizes" in bringing these

actions before the Court:

> While copyright owners have expressed regret that they have felt compelled to take
> this step, they need offer no apologies. As I have already said, people who use
> peer-to-peer technology for the unauthorized reproduction or distribution of
> copyrighted works are breaking the law. Surprisingly, many people do not appear
> to realize this. I have long advocated more public education about copyright. In a
> perfect world, this could be done in classrooms and with billboards. But ours is not
> a perfect world, and public education can also be accomplished through
> enforcement of copyright.

Id. (emphasis added).


### D. **Plaintiff's Technology is Reliable**

Although Defendant attempts to characterize Plaintiff's technology for identifying IP

addresses as unreliable, Defendant references a study that supports Plaintiff's technology.

Defendant's study suggests the best approach to accurately identify IP addresses is to establish a

direct connection with the infringing user and verify the contents received:

> A more thorough approach to detecting infringement in BitTorrent would be to
> adopt the stated industry practice for monitoring the Gnutella network: in the case
> of suspected infringement, download data directly from the suspected user and
> verify its contents.  Because we have notified several enforcement agencies … we
> expect increasing use of direct downloads for verifying information.[6]

(Emphasis added.)  Plaintiff used this exact process to identify John Doe's IP address.  Plaintiff's

investigative service, IPP Limited, established a direct one to one connection with a computer

using Defendant's internet service and received a piece of Plaintiff's copyrighted movie from

---

[5] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks
Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary
108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html
[6] Mem. P. & A. Supp. Def. Doe Mot. Stay at 17 citing Michael Piatek, Tadayoshi Kohno, &
Arvind Krishnamurthy, *Challenges and Directions for Monitoring P2P File Sharing Networks –
or – Why My Printer Received a DMCA Takedown Notice*, 3rd USENIX Workshop on Hot
Topics in Security (HatSec '08), July 2008.

that computer.  "A direct and continuous connection between the IPTRACKER-server and the uploader of the file is established and exists at least 10 seconds before, during and at least 10 seconds after the capture sequence i.e. during the whole download process." (Dec. Tobias Feiser Ex. A. at *4.)   IPP's representatives will be available during the discovery process to demonstrate and attest to this process.

Further, as Defendant's study suggests, Plaintiff has taken additional safeguards for accuracy by verifying the content received from Defendant.[7]  Plaintiff has a human "in the loop" to provide a manual check of the identifying material.  As Plaintiff's investigator, Tobias Fieser, attests, "I analyzed each BitTorrent 'piece' distributed by each IP address listed on Exhibit B and verified that reassembling the pieces using a specialized BitTorrent Client results in a fully playable digital motion picture." (Dec. Tobias Fieser at ¶ 21.)  Plaintiff is absolutely certain that Defendant's IP address downloaded, controlled, and distributed Plaintiff's copyrighted work to its investigative service.  Defendant's study supports Plaintiff's findings.

## IV.      This Court Should Not Stay Proceedings

"[T]he Court in Voltage Pictures, LLC v. Vazquez, 2011 WL 5006942 (D.D.C. 2011) held that a Doe Defendant does not have "a sufficiently protectable legally cognizable interest in the litigation" prior to being named in a joined BitTorrent copyright infringement suit to file a motion.  Here, the Doe Defendants have not been named and because of this are not being prejudiced.  The disingenuousness of Defendant's argument is indicated by circular reasoning.  On the one hand, he argues that the Court should sever and force Plaintiff to sue him individually.  On the other hand, he claims he will suffer if Plaintiff acquiesces, just for this Defendant, and sues the Defendant individually.   These circuitous arguments illustrate that prejudice which Defendant seeks to avoid is simply being a defendant in a law suit.   The tactic

---

[7] Piatek at *6.

being taken towards this end is the filing of motions aimed at making the process prohibitively expensive.

Recently a court in this circuit discussed this exact circular reasoning by doe defendants.

See K-Beech, Inc. v. Does 1-29, 3:11CV357, 2011 WL 5966337 (W.D.N.C. Nov. 28, 2011).

> [I]t appears that the retaliation that such John Doe fears is, in part, being sued in an individual action for copyright infringement, which is the course of action such John Doe defendant later champions as being preferable over so called "mass actions" for copyright infringement. While the court is sensitive to a *pro se* litigant's claim of retaliation, invoking the court's jurisdiction to *civilly* resolve a copyright dispute is not an act of retaliation.

Id.

## V.        This Court Should Not Issue a Protective Order

Defendant should not be granted a protective order on the basis of being named in this law suit. "[P]rotective orders 'should be sparingly used and cautiously granted.'" Baron Fin. Corp. v. Natanzon, 240 F.R.D. 200, 202 (D. Md. 2006). "Rule 10(a), Fed.R.Civ.P., states that 'in the complaint the title of the action shall include the names of all parties.' This rule embodies the presumption, firmly rooted in American law, of openness in judicial proceedings." Doe v. Merten, 219 F.R.D. 387, 390 (E.D. Va. 2004).

The Fourth Circuit has provided factors to consider when determining whether a party should proceed anonymously:

> [W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; the ages of the persons whose privacy interests are sought to be protected; whether the action is against a governmental or private party; and, relatedly, the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993).

Here, Defendant is simply requesting a protective order to avoid the annoyance and embarrassment that may appear with litigation involving copyright infringement of an adult film. A copyright infringement action regarding an adult film, while potentially embarrassing, is not a sensitive and highly personal matter. This risk of embarrassment is not sufficient to permit anonymity. "'The risk that a plaintiff may suffer some embarrassment is not enough' to allow him to proceed anonymously." Doe v. Merten, 219 F.R.D. 387, 392 (E.D. Va. 2004) ((citing Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000) (holding that a convicted sex offender challenging Utah's sex offender registration and notification statute could not proceed anonymously, despite plaintiff's desire to prevent disclosure of his sex offender status)). "The potential embarrassment … of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously." Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 2011 WL 5161453 (D. Mass. Oct. 31, 2011).

VI.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.


Dated: March 12, 2012


                                    Respectfully Submitted,


                        By    */s/ Jon A. Hoppe*
                              Jon A. Hoppe, Esquire #6479
                              Maddox, Hoppe, Hoofnagle &
                              Hafey, L.L.C.
                              1401 Mercantile Lane #105
                              Largo, Maryland 20774
                              (301) 341-2580

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2012 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *Jon A. Hoppe*